UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
THE NEW YORK INDEPENDENT
CONTRACTORS ALLIANCE, INC., et al.,

                    Plaintiffs,

      - v -

THE HIGHWAY, ROAD AND STREET
CONSTRUCTION LABORERS LOCAL
UNION 1010 OF THE DISTRICT
COUNCIL OF PAVERS AND ROAD
BUILDERS OF THE LABORER'S
INTERNATIONAL UNION OF NORTH
AMERICA, et al.,

                    Defendants.
----------------------------------------------------------x

**DECISION AND ORDER**

07-CV-1830 (ERK) (VVP)

POHORELSKY, Magistrate Judge:

       The plaintiffs[1] have moved to disqualify counsel for defendants,[2] and to compel the deposition of one of the defendants' attorneys. The defendants have cross-moved to quash the subpoena for their attorney's deposition, and for a protective order against the service of any further subpoenas on their counsel. For the reasons discussed below, the plaintiffs' motions are DENIED, the defendants' motion to quash is GRANTED, and their motion for a protective order is DENIED.

---

[1]The plaintiffs are The New York Independent Contractors Alliance, Inc. ("NYICA"), The Industry Alliance Fund For The New York Independent Contractors Alliance, Inc. ("NYICA Industry Alliance Fund"), Anthony Fasulo, Dominick Agostino, Rocco Agostino and Michael Pietranico, as Trustees for and on behalf of the Industry Alliance Fund For the New York Independent Contractors Alliance, Inc., The Industry Advancement Fund For the New York Independent Contractors Alliance, Inc., and Anthony Fasulo, Dominick Agostino, Rocco Agostino and Michael Pietranico, as Trustees and for and on behalf of the NYICA Industry Advancement Fund.

[2]The defendants are The Highway, Road and Street Construction Laborors Local Union 1010 of the District Council of Pavers and Road Builders of the Laborers International Union of North America, AFL-CIO, John C. Peters, Vincent Masino and Keith Loscalzo.

## FACTS

The plaintiffs have sued the defendants for breach of, and tortious interference with, a collective bargaining agreement. (Am. Compl., Dkt. Entry 7, ¶¶ 43, 50.) Plaintiff New York Independent Contractors Alliance, Inc. ("NYICA") is an association of independent contractors who engage in site and grounds improvement, and paving and road building work. (Pls.' Mem. of Law in Supp. of Their Mot. to Disqualify Defs.' Counsel and Compel Compliance with Subpoena ("Mem. in Supp.") 3.) One of its functions is to serve as an agent for its members in negotiating collective bargaining agreements with unions, eliminating the need for the contractors to negotiate such agreements individually. (Am. Compl. ¶ 21.) In June 2002, NYICA concluded negotiations with defendant Local 1010 concerning a collective bargaining agreement (the "CBA") to be signed by NYICA members and by any other employers who wished to be bound by the CBA. (Mem. in Supp. 3.) The CBA applied to work performed in New York City for site and grounds improvement, utilities, paving, and road building. (Am. Compl. ¶ 23.)

Among its provisions, the CBA required NYICA members to make certain contributions to the NYICA Industry Alliance Fund and NYICA Industry Advancement Fund. (*Id.* ¶ 26.) The contributions were to be collected from the contractors by Local 1010 and then remitted by Local 1010 to the two NYICA Funds. The CBA was to remain in effect through June 30, 2005, unless one of the parties sent written notice of termination to the other by March 15, 2005. If not terminated, the CBA would continue in effect year to year thereafter unless a notice of termination was sent by March 15 of that year. (*Id.* ¶ 24.)

The plaintiffs allege that a notice of termination of the CBA was not received by NYICA or by Local 1010 prior to March 15, 2005, and that the CBA thus still remained in effect after June 2005. (*Id.* ¶ 31.) They assert that Local 1010, through the actions or directions of its trustees, defendants Vincent Masino and John C. Peters, caused members of NYICA to withdraw their membership from the NYICA and to cease making payments to the NYICA funds as required by the CBA. (*Id.* ¶¶ 32-33.) They assert that the defendants instead caused the payments to be diverted to other employer associations. (*Id.* ¶ 34.) Based on the allegations, the plaintiffs assert claims for tortious interference with the CBA and breach of the CBA, and seek

both equitable relief and damages for the unpaid contributions to the NYICA funds. (*Id.* ¶¶ 43, 50).

Resolution of the central factual dispute in this litigation – whether or not the CBA was renewed and therefore continued in effect after June 2005 – turns on events that occurred during a period in 2005 when Local 1010's leadership was in some turmoil. In May 2005, Local 1010 was placed under an emergency trusteeship by its parent union, the Laborers International Union, and defendants Masino and Peters were appointed trustee and deputy trustee, respectively, of Local 1010. (Opp'n Mem. 3.) Andrew Gorlick, Esq. and Barbara Mehlsack, Esq. of Gorlick, Kravitz & Listhaus, P.C. were retained at that time to represent Local 1010 as it dealt with issues arising from the emergency trusteeship. (*Id.* 5.) In what is described by the defendants as an "attempt[] to maintain the status quo" during a tumultuous time, Gorlick drafted an extension agreement with another employer association, the General Contractors Association ("GCA"), which sought to extend the CBA for ninety days. (*Id.* 4, Mem. in Supp. 4.) Like the CBA, the extension agreement contemplated signatures by the contractors acknowledging their agreement to continue to be bound by the CBA. During that process, Gorlick wrote letters on July 13, 2005 and on August 1, 2005 to various contractors who had apparently chosen not to sign the extension agreement, stating Local 1010's position that the CBA had automatically renewed. (Opp'n Mem. 5, Mem. in Supp. 4-5.) In addition, Mehlsack wrote a letter to the National Labor Relations Board on September 22, 2005 expressing the same position regarding automatic renewal of the CBA. (Opp'n Mem. 5, Mem. in Supp. 5.)

Gorlick's and Mehlsack's conduct in drafting the extension agreement and sending the above letters form the basis for the plaintiffs' motion to disqualify them and their firm pursuant to the witness-advocate rule of the New York Code of Professional Responsibility, Disciplinary Rule DR 5-102(d), 22 N.Y.C.R.R. § 1200.21(d). They contend that they need to call Gorlick and Mehlsack to testify at trial about the preparation and significance of those documents.

DISCUSSION

I. **The Plaintiffs' Motion to Disqualify Under The Witness-Advocate Rule**

   A. *Standards*

The witness-advocate rule manifests the almost self-evident principle that attorneys should generally avoid participating as both advocate and witness in the same proceeding. *See Kalina v. Fletcher*, 522 U.S. 118, 130 (1997). Disciplinary Rule 5-102(d) of The New York Code of Professional Responsibility, which guides courts in the Second Circuit on this issue, states,

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw acting as an advocate before the tribunal.

N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.21(d) (2008). Courts have viewed with disfavor motions to disqualify counsel under the witness-advocate rule, however, "because of their interference with a defendant's right to choose his own counsel and their 'strong potential for abuse.'" *United States v. Locascio*, 357 F. Supp. 2d 536, 553 (E.D.N.Y. 2004) (quoting *Paramount Commc'ns Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994)); *see also Fulfree v. Manchester*, 945 F. Supp. 768, 770 (S.D.N.Y. 1996) ("[M]otions to disqualify opposing counsel are viewed with disfavor because they impinge on parties' rights to employ the counsel of their choice."); *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989) (motions to disqualify counsel are subject to "fairly strict scrutiny," because "the courts must guard against tactical use" of such motions).

To succeed on a motion seeking the disqualification of opposing counsel based on the witness-advocate rule, "the moving party must demonstrate the necessity of the testimony as well as a substantial likelihood of prejudice" to his opponent. *Locascio*, 357 F. Supp. 2d at 554 ((*citing Parkins v. St. John*, No. 01 Civ. 11660, 2004 WL 1620897 at *6 (S.D.N.Y. July 19, 2004) (*quoting Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp.*, 794 F. Supp. 525, 527 (S.D.N.Y. 1992))). "Necessity is determined by consideration of factors such as 'the significance of the matters, the weight of the testimony, and the availability of other evidence.'"

*Id.* (*citing Paramount*, 858 F.Supp. at 394; *Sec. Ins. Co. of Hartford v. Mendon Leasing Corp.*, No. 01 Civ. 9054, 2002 WL 31387484, at *2 (S.D.N.Y. Oct. 22, 2002). Prejudice, on the other hand, requires that the testimony be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id.* (*citing Parke-Hayden, Inc.*, 794 F. Supp. at 527 (*quoting Rice v. Baron*, 456 F. Supp. 1361, 1371 (S.D.N.Y. 1978)).) Moreover, in proving prejudice, the moving party "bears the burden of demonstrating how and as to what issues in the case prejudice may occur and that the likelihood of prejudice occurring is substantial." *Id.*

B. *Necessity of the Attorneys' Testimony*

The plaintiffs seek disqualification on the grounds that Gorlick and Mehlsack will be called to testify at trial about the letters they wrote expressing Local 1010's position regarding renewal of the CBA, and Gorlick's involvement in the drafting and execution of the extension agreement. Whether their testimony is "necessary" on those points, however, is questionable. True and correct copies of the three letters – dated July 13, 2005, August 1, 2005 and September 22, 2005 – about which the plaintiffs wish to have defense counsel testify have already been admitted by defendants for the purpose of this lawsuit. (*See* Defs.' Responses and Objs. to Pls. First Request to Admit Facts, Ex. A to Gastwirth Decl., 3-4.) Similarly, Gorlick does not dispute that he drafted the extension agreement. The letters and extension agreement may therefore be admitted in evidence without testimony by Gorlick and Mehlsack.

The plaintiffs nevertheless argue that they need testimony from Gorlick and Mehlsack to establish why the letters were sent and what led to the statements in the letters that the CBA had automatically been renewed. They point out that the replacement trustees, Peters and Masino, have testified that they have little to no knowledge about those two matters. Neither of those matters is relevant to the issue of whether or not the CBA had actually been renewed, however. The letters themselves merely state a legal position, and were written long after the time for termination had expired so they do not bear on the intent of the parties during the time period in question. Thus, the motivation for writing the letters is of no consequence in determining whether or not the CBA had been renewed or terminated.

Similarly, any question about what facts led counsel to state in the letters that the CBA had automatically renewed would merely seek their legal opinion, which is of no consequence to the determination of whether the CBA had in fact been renewed. In this regard, it is particularly significant that neither Gorlick, Mehlsack, nor their firm, Gorlick, Kravitz & Listhaus, represented Local 1010 during the termination/renewal period during and before March of 2005, and therefore have no personal knowledge of any of the events or the decision-making processes of the union's leadership at that time. Any knowledge they have concerning the facts is based entirely on hearsay – what they have learned through their review of documents and from discussions with others. Thus, any admissible (i.e. non-hearsay) testimony they have would be repetitive of information contained in the letters.

Gorlick's testimony about his involvement in the drafting of the extension agreement is similarly unnecessary and insignificant. The plaintiffs argue that Gorlick's testimony is needed to show "how" Gorlick and his law firm fostered a breach of the NYICA CBA by drafting the extension agreement. There are no factual disputes, however, about whether Gorlick was involved in the drafting of the extension agreement, nor is there a factual dispute about whether the agreement was executed by a number of members of NYICA. Since the defendants admit those facts, Gorlick's testimony is unnecessary to establish them. Whether the various provisions of the agreement constituted breaches of, or tortious interference with, any agreement with the NYICA are entirely separate issues about which Gorlick's opinion would be immaterial and irrelevant.

By contrast, other evidence is clearly available on all of the factual matters actually in dispute. Direct evidence about any conduct that may have constituted either renewal or termination of the CBA can be provided by the parties, including the plaintiffs themselves, as well as the Local 1010 leadership that was actually in place in the late winter and early spring of 2005, before Peters and Masino assumed leadership under the emergency trusteeship in May 2005.[3] Direct evidence of the extension agreement is found in the various versions of the

---

[3]In their reply, the plaintiffs argue for the first time that testimony by defense counsel is necessary to establish an estoppel theory. They argue that the defendants should be estopped from taking the position in this litigation that the CBA was *not* renewed because they earlier took the position in the letters and in an NLRB proceeding that the CBA *had* been renewed. (Pls. Reply Mem. 6-7.) It seems,

agreement that were signed by Local 1010 and the various contractors who agreed to its terms. The plaintiffs have therefore not convinced the court that the defendants' counsel have testimony necessary to the presentation of their case.

C. *Prejudice to Defendants*

As to the issue of prejudice, it does not appear that any testimony by the defendants' counsel, even if it was deemed "necessary," would be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Locascio*, 357 F. Supp. 2d at 554 (*citing Parke-Hayden, Inc.*, 794 F. Supp. at 527 (*quoting Rice*, 456 F. Supp. at 1371)). The testimony would not be prejudicial in the sense that it would likely be consistent with the defendant's account of events: The defendants do not deny that the letters and the extension agreement were written by their counsel, nor that those documents expressed Local 1010's position at the time.

The testimony would in one sense be "adverse" to the defendants' litigation position, to be sure. The testimony may, for example, prominently highlight the inconsistency between their contention that the CBA was not renewed, and their former contention, as set forth in the letters, that it was. At the same time, however, the defendants appear to have no interest in discrediting the testimony, because they have already admitted that the documents are authentic. It is actually the documents themselves that would have prejudicial effect, not any testimony by the attorneys who drafted them. Their testimony would not add any new evidence, and therefore would not be prejudicial above and beyond the statements contained in the documents.

In their reply papers, the plaintiffs seek to manufacture a discrepancy between the defendants' litigation position and testimony that Gorlick would be expected to provide. They argue that the defendants have taken the position that the extension agreement Gorlick drafted served to extend, not the CBA, but some other agreement. (Reply Mem. 8) This, the plaintiffs argue, would conflict with what Gorlick would say if called to testify – that is, that the extension

---

however, that the letters themselves are the best evidence of the defendants' earlier position on the matter, and the plaintiffs do not explain why testimony by the drafters of the letters would be necessary to the estoppel argument. Thus their estoppel theory, improperly raised for the first time on reply, also fails to persuade the court that testimony by defense counsel is necessary.

agreement was intended to extend the CBA – and his testimony would therefore be "prejudicial" to his clients' litigation position. The plaintiffs' premise is faulty. They cite no evidence that the defendants have taken the position that the extension agreement was not intended to extend the CBA, and the court has found no such assertion in the defendants' papers. As the supposed conflict does not exist, it provides no basis for disqualification.

        D. *Conclusion*

The court concludes that the plaintiffs have not met their burden to establish that the circumstances here require the defendants' counsel to withdraw or be disqualified. The plaintiffs clearly articulate their wish to have defense counsel explain the contents of the letters and the extension agreement, but are unable to articulate why the explanations are necessary to their case or how any admissible testimony would be sufficiently prejudicial to the defendants' legal or factual theories in this action. Though the defendants' counsel were involved in various matters concerning the CBA and communicated Local 1010's positions regarding the CBA, counsel's representation of Local 1010 in those matters does not make them central actors to the breach of the CBA. Nor does their involvement in those matters concerning the CBA necessarily impact their ability to fully represent their clients. Accordingly, the motion to disqualify is denied.

## II. **Plaintiffs' Motion to Compel Gorlick's Deposition**

The plaintiffs also seek to compel Gorlick's deposition to explore the letters he wrote identified above, and the extension agreement in particular. The defendants have cross-moved to quash the subpoena served on Gorlick and to obtain a protective order. Generally, within the Second Circuit "depositions of opposing counsel are disfavored," although they "are not categorically prohibited." *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) (quoting *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)). A court faced with a motion to depose an opposing party's attorney must balance "the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001).

As noted in *Sea Tow International v. Pontin*, 246 F.R.D at 424, in deciding whether a deposition of opposing counsel is appropriate in a given case, district courts in New York are guided by *dicta* in the Second Circuit's opinion in *In re Friedman*, 350 F.3d 65 (2d Cir. 2007).

In *Friedman*, the court observed that the analysis requires a "flexible approach," where "the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72. Among the considerations the court noted were (1) the need to depose an opposing counsel; (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; (3) the risk of encountering privilege and work product issues; and (4) the extent of discovery already concluded. *Id*. After weighing the four *Friedman* factors, the court concludes that a deposition of the defendants' counsel is not warranted.

As discussed above in the context of the motion for disqualification, the need to depose Gorlick is not pressing, in light of the documentary evidence, and the irrelevance of his testimony to the question of the breach of the CBA. The plaintiffs nevertheless argue that his testimony is needed to refute Local 1010's denial that the CBA automatically renewed and in particular to explain the significance of letters Gorlick wrote in representing Local 1010. The plaintiffs may of course use the letters Gorlick wrote as evidence of Local 1010's position at the time they were written. Any testimony by Gorlick about *his* understanding of the letters and their significance, however, is immaterial.

As to the second *Friedman* factor, Gorlick had no role with respect to the renewal/ termination of the CBA that would call for his testimony. The plaintiffs mischaracterize Gorlick as a "key witness" simply because he provided legal assistance to Local 1010 in connection with the extension agreement signed by certain NYICA members. Despite the plaintiffs' contentions that the extension agreement constituted a breach of the CBA, Gorlick's role in connection with these matters appears to have been limited primarily to legal representation. A subpoena seeking to depose opposing counsel should be quashed when the attorney's role is limited to legal representation. *Sea Tow Int'l, Inc.*, 246 F.R.D. at 424.

The third *Friedman* factor concerns the potential for encroaching on the attorney-client privilege and the work product doctrine. Any attempts by the plaintiffs to elicit Gorlick's opinion about the significance of the letters and agreements would implicate information subject to the attorney-client privilege and the work product doctrine. Gorlick served as legal counsel to Local 1010 on the letters and agreements in connection with which his testimony is sought. In

the normal course of business, Gorlick would have drafted the documents at issue after instructions from, and discussions with, his client Local 1010. Testimony about the "significance" of those documents would inevitably reveal counsel's thought processes in defending the instant litigation. Because of the risk of encountering privileged information, this factor weighs against the plaintiffs.

The fourth and final *Friedman* factor – the extent to which discovery has been concluded – does not weigh conclusively in favor of either side. By either sides' recollection, Gorlick's testimony was sought only after virtually all discovery had been conducted and completed. On one hand, this indicates that the plaintiffs only sought Gorlick's deposition after their discovery did not lead to the testimony they desire. On the other, the defendants contend that third-party witnesses are available to testify about the same subject matter, including other parties who executed the extension agreements. (Opp'n Mem. 12 (citing to Francis McArdle, who executed the extension agreements and has already been deposed in this action, and Armand Sabitoni and Michael Bearse of LIUNA, who have been subpoenaed to testify on the same matters as the subpoena to Gorlick).) In any event, this factor is largely irrelevant under the present circumstances, since it appears that the testimony sought is not essential to the plaintiffs' case.

Although the plaintiffs present multiple reasons for why Gorlick should be compelled to be deposed, they fail to persuasively connect those reasons to an issue that is in dispute in this litigation. Given that Gorlick has no significant or relevant testimony regarding the claims and defenses in this action, the court concludes that the plaintiffs have not demonstrated a need for his testimony that overcomes the presumption against depositions of opposing counsel. The plaintiffs' motion is therefore denied, and the defendants' motion to quash is granted.

### III. Defendant's Motion for A Protective Order Under FRCP 26(c)

In response to the plaintiffs' motions for disqualification and to compel defense counsel's testimony, the defendants have moved for a protective order. They are concerned that the plaintiffs may attempt to subpoena other attorneys from Gorlick, Kravitz & Listhaus in a further effort to establish a basis for disqualifying defense counsel. Since discovery is now closed, there appears to be no need for such a protective order. Any further subpoenas by the plaintiffs on any person would require an extension of the discovery deadline, and the propriety of any such subpoena can be addressed if and when such an extension is sought.

## Conclusion

For the reasons stated above, the plaintiffs' motion to disqualify the defendants' counsel and to compel Gorlick's deposition is DENIED, the defendants' motion to quash the subpoena for Gorlick's deposition is GRANTED, and the defendants' motion for a protective order is DENIED.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
November 24, 2008